
#300025272

Ashley v. American Airlines, Inc., et al.

FILED-USDC-NDTX-DA
'26 JUL 29 PM 4:15
JJF

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

JASON ASHLEY,

     Plaintiff,

v.                              Civil Action No. _____ **3-26CV2512-S**

AMERICAN AIRLINES, INC.;

ENVOY AIR INC.; and AIR LINE PILOTS

ASSOCIATION, INTERNATIONAL — ENVOY MEC,

     Defendants.

---

### COMPLAINT AND JURY DEMAND

### I. INTRODUCTION

1.    Plaintiff Jason Ashley, a service member and airline pilot, brings this action against Defendants American Airlines, Inc. ("American Airlines"), Envoy Air Inc. ("Envoy"), and Air Line Pilots Association, International ("ALPA") for violations of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301 et seq. ("USERRA"). While Plaintiff was serving on active military duty, Defendants excluded him from a December 3, 2019 flow-through placement at American Airlines because of his military leave status, denied him the December 3, 2019 seniority date to which he was entitled, and imposed an unlawful condition on his reemployment rights upon his return from service. Plaintiff seeks all relief available under USERRA, including lost wages, lost benefits, liquidated damages, and attorney's fees.

### II. JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 38 U.S.C. § 4323(b)(3), which grants federal district courts jurisdiction over USERRA claims against private employers, and 28 U.S.C. § 1331 (federal question jurisdiction).

3.    Venue is proper in this District and Division under 38 U.S.C. § 4323(c)(2) and 28 U.S.C. § 1391(b) because Defendant Envoy Air Inc. maintains its principal place of business at 4301 Regent Blvd., Irving, Texas 75063, located in Dallas County within the Dallas Division of the Northern District of Texas, and a substantial part of the events giving rise to this action occurred in this District, including Envoy's administration of the flow-through eligibility process and its imposition of a condition on Plaintiff's reemployment.

### III. PARTIES

4.    Plaintiff Jason Ashley is an individual residing in Dallas, Texas. Plaintiff's mailing address is P.O. Box 195062, Dallas, Texas 75219. At all relevant times, Plaintiff was employed as a pilot by Envoy Air Inc. and was a member of the armed services serving on active military duty.

5. Defendant American Airlines, Inc. is a Delaware corporation with its principal place of business at 1 Skyview Drive, Fort Worth, Texas 76155, and may be served through its registered agent for service of process in Texas. American Airlines is an employer within the meaning of 38 U.S.C. § 4303(4)(A) because it paid Plaintiff bi-weekly wages, had control over Plaintiff's employment opportunities, and controlled benefits of Plaintiff's employment.

6. Defendant Envoy Air Inc. is a corporation with its principal place of business at 4301 Regent Blvd., Irving, Texas 75063. Envoy is an employer within the meaning of 38 U.S.C. § 4303(4)(A) and may be served through its registered agent for service of process in Texas.

7. Defendant Air Line Pilots Association, International — Envoy MEC is a labor organization with offices at 150 Westpark Way, Suite 230, Euless, Texas, and may be served through its registered agent or officer. ALPA is an employer within the meaning of 38 U.S.C. § 4303(4)(A) because it had control over Plaintiff's employment opportunities and controlled benefits of Plaintiff's employment.

## IV. STATEMENT OF FACTS

### American Airlines as Employer

8. Plaintiff began employment with Envoy in October 2009 in a non-pilot position.

9. In May 2011, Plaintiff applied for a pilot position with Envoy and received a conditional offer of employment on letterhead bearing both the American Eagle Airlines and American Airlines names.

10. As a condition of Plaintiff's pilot employment, American Airlines conducted Plaintiff's pre-employment medical examination and cleared Plaintiff to work as a pilot at Envoy.

11. From October 2009 through the start of his military leave in June 2012, Plaintiff received bi-weekly direct deposit paychecks from American Airlines while employed at Envoy.

12. Plaintiff received a direct deposit payment from American Airlines during his military leave.

13. American Airlines HR personnel communicated directly with Plaintiff regarding benefits of employment and required Plaintiff to meet deadlines, stating that failure to meet those deadlines would result in disruption of Plaintiff's benefits.

14. American Airlines personnel had access to and made entries in the compensation and employment sections of Plaintiff's personnel record during Plaintiff's employment at Envoy, including entries created on March 4, 2018 and October 1, 2019, while Plaintiff was on active military duty.

15. Jim Winkley served as Vice President of Flight Operations at Envoy and was in Plaintiff's supervisory chain of command.

16. As Vice President of Flight Operations, Winkley had authority to discharge pilots from the service of the Company, including Plaintiff.

17. Winkley was simultaneously employed by American Airlines.

18. On January 26, 2011, ALPA filed a formal grievance with American Eagle's Vice President of Human Resources, Cathy McCann, stating that it was doing so "in lieu of Jim Winkley due to his employment at American Airlines and the nature of the grievance."

19. American Airlines management negotiated the terms of agreements governing the transfer of a group of Envoy pilots, including Plaintiff, to American Airlines, and was a direct signatory to Letters of Agreement 12-02, 12-03, and 19-04 governing those transfers.

20. Under Letters of Agreement 12-02, 12-03, and 19-04, American Airlines controlled how many Envoy pilots could transfer to American Airlines and when those transfers would occur.

21. American Airlines awarded positions in American Airlines new hire classes to Envoy pilots.

22. American Airlines set the first day of class date that determined when an Envoy pilot would be placed on the American Airlines seniority list and assigned a seniority number.

23. American Airlines received eligibility determinations from Envoy and ALPA identifying which Envoy pilots were next in line for flow-through positions at American Airlines and awarded class positions based on those determinations.

24. Envoy and ALPA jointly administered the flow-through eligibility determination process by which Envoy pilots were identified and communicated to American Airlines for placement in new hire classes.

25. American Airlines established conditions of employment for Envoy pilots offered positions at American Airlines, including requirements for a valid FAA medical certificate and pilot license.

26. American Airlines applied its Intercompany Employment Policy to eligible Envoy pilots offered new hire positions at American Airlines.

27. Letter 12-02 was issued on the same joint American Eagle Airlines and American Airlines letterhead as Plaintiff's conditional offer of employment.

28. A Pilot Election Status List recorded flow-through eligibility determinations for individual pilots. The Pilot Election Status List listed pilots in Envoy seniority order, reflecting the order in which they would flow through to American Airlines, and recorded the positions awarded to pilots in each American Airlines new hire class.

29. The Pilot Election Status List is hosted on the American Airlines domain and is accessible to American Airlines employees.

30. Plaintiff was listed on the Pilot Election Status List during his military leave and had indicated his willingness to accept a position at American Airlines when offered.

### Military Service and Reemployment Eligibility

31. On April 25, 2012, Plaintiff provided advance notice to Envoy of his upcoming military duty obligation.

32. Plaintiff entered active military duty on June 4, 2012.

33. Upon Plaintiff entering active military duty on June 4, 2012, ALPA listed Plaintiff as inactive on ALPA's published seniority list and recorded his status as military leave of absence on ALPA's status list.

34. Plaintiff's service contract required an eight-year active-duty initial obligation after flight training.

35. Plaintiff's service from June 4, 2012 through December 5, 2014 consisted of The Basic School and military flight school training required as prerequisites before Plaintiff could begin his eight-year service obligation.

36. Plaintiff completed military flight training on December 5, 2014, commencing his eight-year service obligation.

37. On September 28, 2017, Plaintiff requested orders releasing him from military service before the expiration of his service obligation, but his request was denied.

### The Violation — While Plaintiff Was On Active Military Duty

38. On November 19, 2019, Thomas Cross, ALPA Envoy MEC Vice-Chairman, sent Plaintiff an email with the subject line "Seat Lock/Flow Lock."

39. In that email, Cross stated that, after consulting with other individuals, ALPA had determined that Plaintiff would have to upgrade upon his return to Envoy and would be subject to a one-year flow lock, which would begin two weeks before Plaintiff entered upgrade training.

40. In the same email, Cross asked whether it would be possible for Plaintiff to come off military leave in order to complete an upgrade and start the flow-lock clock, and then return to military leave.

41. Plaintiff was on active military duty on November 19, 2019, and remained on active military duty on December 3, 2019.

42. Prior to December 3, 2019, American Airlines awarded positions in its December 3, 2019 new hire class to Envoy pilots in order of their standing on the Envoy seniority list. That order was reflected on the Pilot Election Status List.

43. While Plaintiff was on active military duty, Envoy made Plaintiff ineligible for the December 3, 2019 flow-through to American Airlines because he was on military leave.

44. While Plaintiff was on active military duty, ALPA made Plaintiff ineligible for the December 3, 2019 flow-through to American Airlines because he was on military leave. Plaintiff could not complete the upgrade or serve the one-year flow lock that ALPA determined he would have to complete without first leaving active military duty, which Plaintiff was not free to do.

45. On the Pilot Election Status List, a notation next to Plaintiff's name indicated that he was ineligible to flow.

46. On both the Envoy seniority list and the Pilot Election Status List, the pilots ranked immediately above Plaintiff and immediately below Plaintiff were awarded positions in the December 3, 2019 class.

47. Plaintiff, whose seniority standing fell between those pilots, was not awarded a position in the December 3, 2019 class, even though the pilots directly senior and directly junior to him were.

48. The pilots immediately above and below Plaintiff were added to the American Airlines seniority list on December 3, 2019. Plaintiff was not.

### Plaintiff's Return and Reemployment

49. On December 18, 2021, Plaintiff notified Envoy of his intent to return to civilian employment and requested flow-through placement at American Airlines on the basis that he had been bypassed for the December 3, 2019 flow-through class while on military leave.

50. On February 17, 2022, Envoy, through Captain Ric Wilson, Vice President—Flight, wrote to Aaron Schaap, MEC Chairman of the Air Line Pilots Association, regarding Plaintiff and another pilot returning from active military duty. Envoy stated that both pilots were returning from active military duty and that each would flow to American Airlines due to USERRA.

51. In the same letter, Envoy asked ALPA to grant the Company relief from paragraph 6 of LOA 18-01 so that Plaintiff and the other military pilot could flow to American Airlines without first going through long-term training. Envoy asked Schaap to indicate ALPA's agreement by signing the letter.

52. The letter stated that once the relief was granted, both pilots would be placed in the first available class at American Airlines, consistent with their seniority, provided it did not cause any other pilot to be removed from that class.

53. Captain Wilson signed the letter on February 17, 2022. Aaron Schaap signed the letter under the heading "Agreed to" on February 24, 2022, on behalf of ALPA.

54. On March 1, 2022, Plaintiff submitted a written request to American Airlines for reemployment in the position he would have obtained had he not been on military leave, pursuant to USERRA.

55. American Airlines received and acknowledged the March 1, 2022 request and stated it understood the matter had already been addressed with Envoy.

### Plaintiff Returns to Employment

56. Envoy reemployed Plaintiff on March 9, 2022.

57. Plaintiff was transferred to American Airlines on May 11, 2022.

58. Plaintiff was honorably discharged from military service on June 1, 2022.

59. The twelve Envoy pilots ranked closest above Plaintiff on the Envoy seniority list and the twelve ranked closest below him all flowed to American Airlines in the December 3, 2019 class, while Plaintiff was not reemployed in that escalator position.

60. Envoy determined which Envoy pilots were eligible to flow to American Airlines and recorded the date on which each pilot was awarded a flow position.

61. Had Plaintiff's employment not been interrupted by military service, Plaintiff would have attained the position and status required to be awarded a position in the December 3, 2019 new hire class at American Airlines.

62. Envoy has not recorded a December 3, 2019 flow award date for Plaintiff and has not placed Plaintiff in the position on the flow list that he would have held had his employment not been interrupted by military service.

### Department of Labor Finding

63. In written communications to the U.S. Department of Labor, Envoy identified Plaintiff's military leave as the basis for his ineligibility.

64. Specifically, Envoy stated that Plaintiff "took military leave beginning June 9, 2012, and has been on military leave since then," and that he was therefore "not eligible to flow-up to American until he returns to active service at Envoy."

65. In communications with the U.S. Department of Labor on April 12, 2022, ALPA confirmed that Plaintiff was required to be in active status with Envoy in order to apply for the flow-through program.

66. Envoy permitted pilots on other categories of leave of absence to remain eligible to flow to American Airlines without returning to active service at Envoy.

67. ALPA permitted pilots on other categories of leave of absence to remain eligible to flow to American Airlines without returning to active service at Envoy.

68. On August 31, 2022, the U.S. Department of Labor Veterans' Employment and Training Service determined that Plaintiff's allegations were meritorious, that Envoy was not in compliance with 38 U.S.C. § 4312 and 20 C.F.R. § 1002.103, and that Plaintiff's flow date to American Airlines should be effective December 2019 with requisite seniority.

### American Airlines' Denial of Escalator Position

69. On October 6, 2022, relying on the Department of Labor's August 31, 2022 determination, Plaintiff requested that American Airlines adjust his seniority date to December 3, 2019.

70. On October 26, 2022, American Airlines, through Sue Kalosa, denied Plaintiff's request, stating that pilots do not receive a seniority number until they physically show up for the first day of training at American Airlines.

71. Rather than the December 3, 2019 date supported by the Department of Labor's determination, American Airlines kept Plaintiff's assigned seniority date of May 11, 2022.

72. As a result of American Airlines' actions, Plaintiff works under a May 11, 2022 seniority date and is treated as a 2022 hire rather than as a December 3, 2019 hire.

### V. CLAIMS FOR RELIEF

### COUNT I
### Violation of 38 U.S.C. § 4311(a)
### — Denial of Benefit of Employment (December 2019) —

**(Against Defendant American Airlines, Inc.)**

73. Plaintiff incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

74. At all times relevant to this Count, Plaintiff was on active military duty pursuant to a service obligation and had provided advance notice of his service to Envoy. Plaintiff was a person performing service in a uniformed service within the meaning of 38 U.S.C. § 4303(13).

75. American Airlines is an employer within the meaning of 38 U.S.C. § 4303(4)(A).

76. A position in an American Airlines new hire class, and the seniority date accompanying that position, is a benefit of employment within the meaning of 38 U.S.C. § 4303(2).

77. American Airlines awarded positions in its December 3, 2019 new hire class to Envoy pilots based on eligibility determinations it received from Envoy and ALPA.

78. American Airlines did not award Plaintiff a position in the December 3, 2019 new hire class. American Airlines awarded positions in that class to Envoy pilots both senior and junior to Plaintiff on the Envoy seniority list.

79. Plaintiff's active-duty military service was a motivating factor in American Airlines' denial of that benefit.

80. As a direct and proximate result, Plaintiff has suffered loss of pay, loss of employment benefits, and other damages in amounts to be proven at trial.

**COUNT II**
**Violation of 38 U.S.C. § 4311(a)**
**— Denial of Benefit of Employment (October 2022) —**
**(Against Defendant American Airlines, Inc.)**

81. Plaintiff incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

82. At all times relevant to this Count, Plaintiff was a person who had performed service in a uniformed service within the meaning of 38 U.S.C. § 4303(13).

83. American Airlines is an employer within the meaning of 38 U.S.C. § 4303(4)(A).

84. A December 3, 2019 seniority date at American Airlines is a benefit of employment within the meaning of 38 U.S.C. § 4303(2).

85. On October 6, 2022, Plaintiff requested that American Airlines adjust his seniority date to December 3, 2019, referencing the August 31, 2022 DOL determination that Plaintiff's flow date to American Airlines should be effective December 2019 with requisite seniority.

86. On October 26, 2022, American Airlines denied Plaintiff's request, stating that pilots do not receive a seniority number until they physically appear for the first day of training. Plaintiff was not physically present on December 3, 2019 solely because he was on active military duty. American Airlines assigned Plaintiff a seniority date of May 11, 2022 instead.

87. Plaintiff's military service was a motivating factor in American Airlines' denial of a December 3, 2019 seniority date.

88. As a direct and proximate result, Plaintiff has suffered loss of seniority standing, loss of pay, loss of employment benefits, and other damages in amounts to be proven at trial.

## COUNT III
### Violation of 38 U.S.C. § 4316(a)
### — Failure to Reemploy in Escalator Position —
### (Against Defendant American Airlines, Inc.)

89. Plaintiff incorporates by reference paragraphs 1 through 88 as if fully set forth herein.

90. American Airlines is an employer within the meaning of 38 U.S.C. § 4303(4)(A).

91. At all times from October 2009 until the commencement of his military service in June 2012, American Airlines was an employer of Plaintiff within the meaning of 38 U.S.C. § 4303(4)(A), and Plaintiff was absent from that employment by reason of service in the uniformed services.

92. Plaintiff was absent from civilian employment by reason of service in the uniformed services, timely applied for reemployment upon conclusion of his service, and was honorably discharged on June 1, 2022. Plaintiff provided advance notice of his service to his Envoy supervisor, who processed Plaintiff's military leave of absence. Plaintiff's 2012 military leave of absence is reflected in the records of both Envoy and American Airlines.

93. mandatory professional training before commencement, and Plaintiff's request for early release was denied through no fault of his own.

94. Plaintiff met all eligibility requirements for reemployment under 38 U.S.C. § 4312.

95. Under 38 U.S.C. § 4316(a), Plaintiff is entitled upon reemployment to the seniority and other rights and benefits determined by seniority that he would have attained had his employment not been interrupted by military service.

96. Based on his seniority position between the Envoy pilots who received positions in the December 3, 2019 new hire class, Plaintiff's escalator position is a December 3, 2019 seniority date at American Airlines.

97. American Airlines failed to reemploy Plaintiff in his escalator position and instead assigned him a seniority date of May 11, 2022.

98. As a direct and proximate result, Plaintiff has suffered loss of seniority standing, loss of pay, loss of employment benefits, and other damages in amounts to be proven at trial.

## COUNT IV
### Violation of 38 U.S.C. § 4311(a)
### — Denial of Benefit of Employment (December 2019) —
### (Against Defendant Envoy Air Inc.)

99. Plaintiff incorporates by reference paragraphs 1 through 98 as if fully set forth herein.

100. At all times relevant to this Count, Plaintiff was on active military duty pursuant to a service obligation and had provided advance notice of his service to Envoy. Plaintiff was a person performing service in a uniformed service within the meaning of 38 U.S.C. § 4303(13).

101. Envoy is an employer within the meaning of 38 U.S.C. § 4303(4)(A).

102. A position in an American Airlines new hire class, and the seniority date accompanying that position, is a benefit of employment within the meaning of 38 U.S.C. § 4303(2).

103. Envoy determined that Plaintiff was ineligible for the December 3, 2019 flow-through to American Airlines because he was on military leave and took action that caused Plaintiff to be excluded from the December 3, 2019 new hire class.

104. Plaintiff's active-duty military service was a motivating factor in Envoy's action.

105. As a direct and proximate result, Plaintiff has suffered loss of pay, loss of employment benefits, and other damages in amounts to be proven at trial.

### COUNT V
### Violation of 38 U.S.C. § 4302(b)
### — Imposition of Additional Prerequisite to Reemployment —
### (Against Defendant Envoy Air Inc.)

106. Plaintiff incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

107. Plaintiff was entitled to reemployment rights and benefits under 38 U.S.C. § 4312.

108. Under 38 U.S.C. § 4302(b), USERRA supersedes any agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by USERRA, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

109. On February 17, 2022, Envoy conditioned Plaintiff's placement in the first available American Airlines new hire class on that placement not causing any other pilot to be removed from such class.

110. This condition established an additional prerequisite to Plaintiff's receipt of a reemployment benefit to which he was entitled under USERRA.

111. As a direct and proximate result, Plaintiff's class placement was delayed and Plaintiff has suffered loss of pay, loss of employment benefits, and other damages in amounts to be proven at trial.

### COUNT VI
### Violation of 38 U.S.C. § 4316(a)
### — Failure to Reemploy in Escalator Position —
### (Against Defendant Envoy Air Inc.)

112. Plaintiff incorporates by reference paragraphs 1 through 111 as if fully set forth herein.

113. Envoy is an employer within the meaning of 38 U.S.C. § 4303(4)(A).

114. Plaintiff was absent from his position of employment with Envoy by reason of service in the uniformed services, provided advance notice of his service to Envoy, timely applied for reemployment upon conclusion of his service, and was honorably discharged on June 1, 2022.

115. Plaintiff's service is exempt from the five-year limit under 38 U.S.C. § 4312(c)(1) and (c)(2), and Plaintiff met all eligibility requirements for reemployment under 38 U.S.C. § 4312.

116. Envoy reemployed Plaintiff on March 9, 2022.

117. Under 38 U.S.C. § 4316(a), Plaintiff is entitled upon reemployment to the seniority and other rights and benefits determined by seniority that he would have attained had his employment not been interrupted by military service.

118. Positions in the December 3, 2019 new hire class at American Airlines were awarded to Envoy pilots in order of their standing on the Envoy seniority list, and Plaintiff's escalator position is a flow award effective December 3, 2019 with the corresponding standing on the Envoy flow list.

119. Upon reemploying Plaintiff, Envoy did not restore Plaintiff to that position, and has not corrected its records to reflect a December 3, 2019 flow award date or the corresponding standing on the flow list.

120. As a direct and proximate result, Plaintiff has suffered loss of seniority standing, loss of pay, loss of employment benefits, and other damages in amounts to be proven at trial.

## COUNT VII
### Violation of 38 U.S.C. § 4311(a)
### — Denial of Benefit of Employment (December 2019) —
### (Against Defendant Air Line Pilots Association, International)

121. Plaintiff incorporates by reference paragraphs 1 through 120 as if fully set forth herein.

122. At all times relevant to this Count, Plaintiff was on active military duty pursuant to a service obligation and had provided advance notice of his service to Envoy. Plaintiff was a person performing service in a uniformed service within the meaning of 38 U.S.C. § 4303(13).

123. ALPA is an employer within the meaning of 38 U.S.C. § 4303(4)(A).

124. A position in an American Airlines new hire class, and the seniority date accompanying that position, is a benefit of employment within the meaning of 38 U.S.C. § 4303(2).

125. ALPA determined that Plaintiff was ineligible for the December 3, 2019 flow-through to American Airlines because he was on military leave and took action that caused Plaintiff to be excluded from the December 3, 2019 new hire class.

126. Plaintiff's active-duty military service was a motivating factor in ALPA's action.

127. As a direct and proximate result, Plaintiff has suffered loss of pay, loss of employment benefits, and other damages in amounts to be proven at trial.

## COUNT VIII
### Violation of 38 U.S.C. § 4302(b)
### — Imposition of Additional Prerequisite to Reemployment —
### (Against Defendant Air Line Pilots Association, International)

128. Plaintiff incorporates by reference paragraphs 1 through 127 as if fully set forth herein.

129. Plaintiff was entitled to reemployment rights and benefits under 38 U.S.C. § 4312.

130. provided by USERRA, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

131. On February 24, 2022, ALPA MEC Chairman Aaron Schaap agreed to and signed the February 17, 2022 letter imposing a condition on Plaintiff's placement in the first available American Airlines new hire class requiring that such placement not cause any other pilot to be removed from such class.

132. By agreeing to and signing that condition, ALPA established an additional prerequisite to Plaintiff's receipt of a reemployment benefit to which he was entitled under USERRA.

133. As a direct and proximate result, Plaintiff's class placement was delayed and Plaintiff has suffered loss of pay, loss of employment benefits, and other damages in amounts to be proven at trial.

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason Ashley respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

    a. A declaration that Defendants violated USERRA;

    b. An order requiring Defendants to comply with the provisions of 38 U.S.C. §§ 4311, 4312, and 4316, including an order directing American Airlines to adjust Plaintiff's seniority date to December 3, 2019, with all attendant rights and benefits, pursuant to 38 U.S.C. § 4323(d)(1)(A);

    c. Compensation for all loss of wages and benefits suffered by reason of Defendants' failure to comply with the provisions of this chapter, pursuant to 38 U.S.C. § 4323(d)(1)(B);

    d. Interest on the compensation awarded under subparagraph (B), calculated at a rate of 3 percent per year, pursuant to 38 U.S.C. § 4323(d)(1)(C);

    e. Liquidated damages in the greater amount of $50,000 or a sum equal to the amounts awarded under subparagraphs (B) and (C), upon a finding that Defendants knowingly failed to comply with the provisions of this chapter, pursuant to 38 U.S.C. § 4323(d)(1)(D);

    f. In the alternative, should the amendments made to 38 U.S.C. § 4323(d) by Public Law 118-210 (Jan. 2, 2025) be held not to apply to the conduct alleged, liquidated damages in an amount equal to the compensation awarded under subparagraph (B), upon a finding that Defendants' failure to comply was willful, pursuant to 38 U.S.C. § 4323(d)(1)(C) as in effect before those amendments;

    g. Such equitable relief as the Court deems just and proper, including the full equity powers of the Court pursuant to 38 U.S.C. § 4323(e);

    h. Reasonable attorney's fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2) in the event Plaintiff obtains private counsel, together with costs of court;

    i. Prejudgment and post-judgment interest as otherwise allowed by law; and

j.  Such other and further relief as the Court deems just and proper.

## VII. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Jason Ashley
Plaintiff, Pro Se
P.O. Box 195062
Dallas, Texas 75219
Telephone: 214-247-1036
Facsimile: None
Email: plaintiffJA@protonmail.com

Dated: _____7/24/26_____

JS 44 (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

3-26CV2512-S

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Jason Ashley

**DEFENDANTS**

American Airlines, Inc.; Envoy Air Inc.; Air Line Pilots Association, International-Envoy MEC

**(b)** County of Residence of First Listed Plaintiff **Dallas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**RECEIVED**

**JUL 29 2026**

CLERK U.S. DISTRICT COURT
NORTHERN DIST. OF TEXAS

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | [ ] 840 Trademark | [ ] 460 Deportation |
| | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | [ ] 385 Property Damage Product Liability | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 362 Personal Injury - Medical Malpractice | [ ] 751 Family and Medical Leave Act | [ ] 863 DIWC/DIWW (405(g)) | |
| | | | [ ] 864 SSID Title XVI | |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation / [ ] 865 RSI (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment | [ ] 510 Motions to Vacate Sentence | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** / [ ] 462 Naturalization Application | **IMMIGRATION** | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education | [ ] 540 Mandamus & Other / [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | |
| | | [ ] 555 Prison Condition | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
38 U.S.C. §§ 4311, 4312, 4316, 4323

Brief description of cause:
Denial of reemployment rights and employment benefits based on uniformed service (USERRA).

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE
7/29/2026

SIGNATURE OF ATTORNEY OF RECORD
Pro Se

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____